UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| John Fralish, *on behalf of himself and others similarly situated*,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>Digital Media Solutions Inc.,  )<br>)<br>Defendant/Third-Party Plaintiff,  )<br>──────────────────────  )<br>v.  )<br>)<br>Shaniko Johnson,  )<br>)<br>Third-Party Defendant.  ) | Civil Action No.: 3:21-cv-00045 |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES AND REQUESTS FOR ADMISSION**

Nearly three months after he served his discovery requests, John Fralish ("Plaintiff") remains without *a single document* from Digital Media Solutions Inc. ("Defendant"), and with substantially no answers to Plaintiff's interrogatories. Instead, Defendant has *de facto* filibustered this litigation.[1]

These discovery requests are highly relevant to the merits of Plaintiff's claims, as well as to the numerosity, commonality, and typicality requirements of Rule 23(a), as well as the predominance requirement of Rule 23(b). Moreover, the sought-after discovery is relevant to

---

[1] Notably, these deficiencies were also raised in a similar proposed class action also involving Plaintiff, undersigned counsel, and counsel for Defendant, in *Fralish v. Deliver Technology, LLC*, No. 3:20-cv-00353 DRL-MGG, ECF Nos. 17, 24 (N.D. Ind.). Similarly, the defendants there refused to produce a single document in response to Plaintiff's discovery requests, and similarly incorporated dozens of general objections into their discovery responses. *See id.* In fact, only *after* Plaintiff filed his motion to compel did they produce *some* documents—116 days after the original due date. *See id.* at ECF No. 24. The motion to compel in that matter remains pending.

1

determining class damages, and to Defendant's affirmative defenses of, among other things, prior express consent and its claim of an "innocent mistake and/or bona fide error." ECF No. 6 at 22. Because the discovery Plaintiff seeks is relevant, necessary, and within Defendant's custody or control, this Court should compel its production.

## Background and Overview

This class action arises under the Telephone Consumer Protection Act ("TCPA"). The gravamen of Plaintiff's complaint is that Defendant delivered dozens of advertising and telemarketing text messages to Plaintiff's cellular telephone number in an effort to promote Defendant's goods or services. *See generally* ECF No. 1. In doing so, Defendant delivered over 90 text messages to Plaintiff's cellular telephone number. *Id.* at ¶¶ 14-22. And each of these text messages were sent to Plaintiff despite his number being registered to the Federal Do-Not-Call list ("DNC") during the entire relevant period. *Id.* at ¶ 13. Further, each of these text messages appear to be intended for a third party that Plaintiff did not and does not know. *Id.* at ¶ 39.

As a result, Plaintiff alleges that Defendant violated 47 U.S.C. § 227(c)(5), which provides that any "person who has received more than one telephone call [or text message] within any 12-month period *by or on behalf of* the same entity in violation of the [DNC] regulations may . . . bring . . . an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater." (emphasis added).

Plaintiff seeks to certify the following class:

All persons throughout the United States (1) to whom Digital Media Solutions Inc. delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Digital Media Solutions Inc.'s goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Digital Media Solutions Inc. delivered, or caused to be delivered, at least two of the text

2

messages within the 12-month period, (3) from January 20, 2017 through the date of class certification.

ECF No. 1, ¶ 51.

## Discovery Requests at Issue

Plaintiff moves to compel substantive responses to his requests for production, interrogatories, and requests for admission focused on Plaintiff's individual claims, identifying potential class members, the number of them, and Defendant's affirmative defenses. These discovery requests, with Plaintiff's telephone number redacted in part, are attached as Exhibit A.

As an initial matter, on April 8, 2021, Plaintiff served his consolidated discovery requests, and in the nearly three months since that date, Defendant has not produced a single document in response to Plaintiff's thirty-eight requests for production. *See* Defendant's Responses and Objections to Plaintiff's First Set of Requests for Production, attached as Exhibit B. As a result, Plaintiff seeks to compel substantive responses to each of his requests for production and for this Court to overrule Defendant's objections. *See id*.

Next, Defendant provides incomplete answers to five of Plaintiff's interrogatories—Nos. 1, 5, 6, and 15-16—and does not substantively respond to interrogatory Nos. 2-4, 7-14, or 17-18. *See* Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories, attached as Exhibit C. As a result, Plaintiff seeks to compel complete responses to each of his eighteen interrogatories and for this Court to overrule Defendant's objections. *See* Ex. C at 3-5.

Lastly, Defendant's responses to Plaintiff's requests for admission are rife with either invalid objections, or internally inconsistent responses that reflect a lack of good faith. Specifically, Defendant contends that requests for admission addressing factual issues "call[] for a legal conclusion that is one of the ultimate issues in this case," and accordingly appear to deny requests for admission Nos. 1-2, 5-6 on that basis. *See* Defendant's Responses and Objections to

Plaintiff's Requests for Admission, attached as Exhibit D, at 4. In fact, Defendant claims to not understand the meaning of the word "sent" when asked about text messages it "sent, or caused to be sent." *Id.* And, to be sure, despite follow-up clarification from Plaintiff to ensure Defendant understood the meaning of the term "sent," Defendant did not amend its responses—or substantively respond at all. *See* Exhibit E at 8.

Moreover, Defendant denies that it "does not have a written or electronic document from Plaintiff in which he gave express written consent for Defendant to send, or cause to be sent, text messages" to his cellular telephone number, yet refuses to provide those documents that would substantiate this response. *See* Ex. D at 5. As a result, Plaintiff seeks to compel substantive responses to each of Plaintiff's six requests for admission and for this Court to overrule Defendant's objections. *See* Ex. A. at 8.

On May 20, 2021, following Defendant's deficient discovery responses, Plaintiff served a detailed Rule 37 conferral letter identifying these deficiencies. *See* Ex. E. Despite multiple follow up efforts, Defendant has not responded to Plaintiff's letter. *See* Local Rule 37.1 Statement, attached as Exhibit F. This motion to compel follows.

## Legal Standard

Rule 26(b)(1) provides, in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *United States v. Haddox*, No. 2:08-CV-208PPSPRC, 2009 WL 3586957, at *2 (N.D. Ind. Oct. 27, 2009) (Cherry, M.J.). Rather, "relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *United States v. Autumn Ridge Condo. Ass'n, Inc.*, 265 F.R.D. 323, 326 (N.D. Ind. 2009) (Cherry, M.J.).

Rule 37 permits a party to request an order from the Court compelling discovery. *Id*. "When the discovery sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Jones v. Hamilton Cnty. Sheriff's Dept.*, No. IP 02-0808-C-H/K, 2003 WL 21383332, at *3 (S.D. Ind. June 12, 2003). Significantly, then, for the party opposing discovery and bearing the burden of demonstrating a discovery request is improper, "courts in this Circuit have repeatedly admonished the objecting litigant that this 'burden cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Hobson v. Trans Union, LLC*, No. 1:13-CV-54, 2014 WL 12775013, at *4 (N.D. Ind. June 6, 2014) (Cosbey, M.J.) (collecting cases); *see also Barker v. Kapsch Trafficcom USA, Inc.*, No. 119CV00987TWPMJD, 2019 WL 2524249, at *1 (S.D. Ind. June 18, 2019) ("general objections to discovery requests that merely recite boilerplate language without explanation do not meet this burden, and courts within the Seventh Circuit consistently overrule them or entirely disregard

such."); *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) (same).

## Argument

### I.     This Court should overrule or strike Defendant's boilerplate objections.

First, Defendant offers a total of 40 paragraphs of "general objections" which it incorporates for *each* of its 18 answers to Plaintiff's interrogatories (15 general objections), *each* of its 38 responses to Plaintiff's requests for production (15 general objections), and each of its responses to Plaintiff's six requests for admission (10 general objections). *See* Exs. B, C, D. However, district courts in Indiana—like many others around the country—do not tolerate or accept such practices. Put simply, Defendant bears the burden of demonstrating each discovery request to which it objects is improper, and "courts in this Circuit have repeatedly admonished the objecting litigant that this 'burden cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Hobson*, 2014 WL 12775013, at *4. Defendant does this in response to every discovery request.

When Defendant did attempt to answer or otherwise respond to Plaintiff's discovery requests, those answers and responses were made "subject to" those numerous general objections, rendering each discovery response fundamentally incoherent and inadequate. Interposing general objections that do not clearly apply to specific interrogatories or requests for production leads to further confusion and obfuscation, and, "[a]s other Seventh Circuit district courts have noted, '[m]aking general objections is a dangerous practice, as the party who offers such general objections runs the risk of having them summarily denied.'" *Barker*, 2019 WL 252424, at *1 (overruling all general objections) (citing *Avante Int'l Tech., Inc. v. Hart*

*Intercivic, Inc.*, 2008 WL 2074093, at *2 (S.D. Ill. 2008)); *see also Osborn v. Brown*, No. 2:12-CV-00775-TC-EJF, 2013 WL 1703748, at *1 (D. Utah Apr. 19, 2013) (striking "general objections [that] reflect a disapproved 'practice of asserting a general objection 'to the extent' it may apply to particular requests for discovery.'").

Plaintiff raised these issues in his Rule 37 conferral letter with Defendant, but Defendant did not even attempt to remedy these deficiencies. As a result, this Court should overrule all of Defendant's general objections.

**II.    Defendant may not avoid its discovery obligations by claiming that it is perpetually investigating Plaintiff's claims.**

In response to nearly every request for production and interrogatory, Defendant fails to answer or respond based on a repeated claim that "Defendant responds that it will produce any non-privileged documents responsive to this request in their possession, custody, or control, if any are discovered as a result of Defendants' [sic] continuing investigation." *See generally* Exs. B, C. But Defendant is not entitled to respond in this manner to avoid all discovery obligations, particularly when nearly two months have elapsed since Defendant first claimed that it is "continuing investigation."

Magistrate Judge Baker of the Southern District of Indiana addressed similarly deficient discovery responses in *In re Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.*, No. 1:14-ML-2570-RLY-TAB, 2018 WL 623962 (S.D. Ind. Jan. 30, 2018). There, the defendants sought to delay discovery with similarly unhelpful answers and responses: "the Cook Defendants object on the basis that discovery and the Cook Defendants' investigation into the facts surrounding the case, including consulting with experts regarding the same, remain ongoing. Cook Defendants will supplement this answer as required by the Federal Rules of Civil Procedure and any applicable Case Management deadlines established by the Court." *Id.* at *1.

Magistrate Judge Baker rejected these dilatory tactics, noting that, "[a]s the responses reflect, the Cook Defendants raised a number of objections to these interrogatories, but provided no substantive responses. The idea that the Cook Defendants cannot produce a single fact in response to these interrogatories strains credulity. The Cook Defendants did not argue that they had no facts to produce." *Id.* at *2. As a result, the court compelled the defendants to provide substantive answers and responses to the outstanding discovery requests. *See id.*

For the same reason, Defendant should not be permitted to abstain from or unilaterally stay its discovery obligations by claiming that is "continuing investigation." As a result, and given that nearly three months have elapsed since Plaintiff served his discovery requests, this Court should compel Defendant to substantively respond to all of Plaintiff's discovery requests.

### III. This Court should compel Defendant to produce information regarding Plaintiff's individual claims.

#### A. Defendant failed to answer nearly all of Plaintiff's interrogatories.

As a threshold issue, Defendant broadly fails to provide any discovery answers or responses on topics that directly pertain to Plaintiff's individual claims under the TCPA. For example, interrogatory Nos. 2-3 ask Defendant to identify the business entities that participated in communicating with Plaintiff (No. 2) and the number and substance of communications with Plaintiff (No. 3).[2] *See* Ex. C at 6. Interrogatory No. 4 asks Defendant to identify the hardware and software it used to deliver text messages to Plaintiff.[3] *Id.* at 7.

---

[2]   These interrogatories seek core information concerning Plaintiff's claims under 47 U.S.C. 227(c)(5). For example, the total number of text messages delivered by Defendant bears directly on Plaintiff's claim for damages, since damages are awarded for each communication made in violation of the statute. 47 U.S.C. 227(c)(5)(B).

However, after incorporating pages of general objections—including claiming that this information is not relevant—Defendant contends that all of this information is in the custody of a mysterious third party, but Defendant does not explain what information it is unable to access, and so these boilerplate objections are without support. *See Eshelman v. Puma Biotechnology,*

Similarly, interrogatory No. 15 seeks Defendant's efforts to verify that Plaintiff's cellular telephone number was assigned to its intended recipient, and interrogatory No. 16 seeks Defendant's efforts to verify that Plaintiff's cellular telephone number was registered to the DNC list.[4] *Id.* at 12-14. Defendant responded to these interrogatories only by stating that "it is Defendant's understanding that (312) 283-4587 was submitted to the website(s) of the lead generator from which the telephone number acquired was Defendant in connection with the provision of prior express written consent to be contacted notwithstanding whether or not the telephone number had been previously placed on a federal or state do not call registry." *See id.*

---

*Inc.*, No. 7:16-CV-18-D, 2018 WL 1702773, at *7 (E.D.N.C. Apr. 6, 2018) (granting motion to compel, and finding that the objection "that the request sought information that is possessed by third parties and is equally accessible to Defendant through discovery of said individuals and entities" is "boilerplate"). Notably, in the other *Fralish* matter involving Defendant's counsel, *see supra* n.1, the defendants made materially identical objections, but the third-party vendor involved in those communications emphatically stated that those defendants had access to the requested information. *See Fralish v. Digital Media Solutions, Inc.*, Case No. 3:20-cv-00353 DRL-MGG, ECF No. 31-1 (N.D. Ind. June 9, 2021).

[3]    Plaintiff is entitled to explore the system(s) that Defendant used to deliver, or cause to be delivered, text messages to his cellular telephone, as the functionality of that system bears on—among other things—whether Defendant implemented and established a system capable of avoiding violations of the TCPA, *see* 47 U.S.C. 227(c)(5)(C), or even whether Defendant had reason to believe a telephone number was a residential telephone number. *See, e.g.*, *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

[4]    Each of these interrogatories address issues raised by Defendant's affirmative defenses, including Defendant's affirmative defenses of prior express consent or an "innocent mistake and/or bona fide error." ECF No. 6 at 22. To be clear, "[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); *see also Cataldi v. Ocwen Loan Servicing, LLC*, No. 17-11487, 2017 WL 5903440, at *2 (E.D. Mich. Nov. 30, 2017) ("[P]rior express consent is an affirmative defense, and Defendant has the burden of proof of establishing the consent."). As a result, courts routinely compel TCPA defendants to produce evidence of prior express consent—to the extent they intend to assert such a defense. *See, e.g.*, *Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *4 (N.D. Ill. June 13, 2011) *Donnelly v. NCO Fin. Sys., Inc.,* 263 F.R.D. 500, 504 (N.D. Ill. 2009).

But Defendant refused to provide any information to substantiate these claims, including—at minimum—the websites where Defendant claims to have obtained Plaintiff's cellular telephone number.

Lastly, interrogatory No. 17 seeks the unique telephone numbers or short codes Defendant used to communicate with Plaintiff, and interrogatory No. 18 seeks Defendant's relationship with the specific telephone numbers and short codes that communicated with him. *Id.* at 13-14. And as discussed *supra* Argument § II, after nearly two months have elapsed since those initial inadequate answers, Defendant still has not provided *any* substantive answers to those interrogatories.

Given Defendant's near-total failure to respond to Plaintiff's interrogatories, this Court should compel Defendant to answer all of Plaintiff's individual claim-based interrogatories.

### B. Defendant has not produced a single document in response to Plaintiff's requests for production.

Defendant's responses to Plaintiff's requests for production fare even worse. That is, Defendant has not produced a single document in response to *any* of Plaintiff's requests.

Many of Plaintiff's requests for production mirror the issues raised *supra* Argument § III.A, such as documents Defendant associates with Plaintiff and its communications with Plaintiff (Nos. 2-4); the hardware and software Defendant used to contact Plaintiff (No. 5), Defendant's recordkeeping system (Nos. 6, 22), Defendant's policies for avoiding TCPA violations (Nos. 16-19), evidence of prior express consent (Nos. 32-33), and requests addressing administrative matters, such as Defendant's association with various third parties, telephone numbers, and vendors (Nos. 21, 24-31). *See* Ex. B.

Because the documents Plaintiff seeks are plainly relevant and are in Defendant's possession, this Court should compel Defendant to respond to all of Plaintiff's individual claim-based requests for production.

### C. Defendant failed to substantively respond to nearly all of Plaintiff's requests for admission.

Similar to the issues identified *supra* Argument §§ III.A-B, each of Plaintiff's requests for admission pertain to either (1) the number of text messages Defendant delivered (or caused to be delivered) to Plaintiff's cellular telephone number, or (2) consent Defendant contends it has to deliver those text messages to Plaintiff's cellular telephone number. But Defendant "denies" that it "does not have a written or electronic document from Plaintiff in which he gave express written consent for Defendant to send, or cause to be sent, text messages to telephone number (312) 283-[XXXX]." Ex. D at 5. However, for that denial to be true, Defendant must, therefore, have "a written or electronic document from Plaintiff in which he gave express written consent for Defendant to send, or cause to be sent, text messages to telephone number (312) 283-[XXXX]." *Id.* But Defendant fails to produce a single document evidencing express written consent from Plaintiff, and similarly fails to identify any prior express consent from Plaintiff in its answers to Plaintiff's interrogatories aside from a generic recitation that "the lead generator from which telephone number (312) 283-4587 was acquired requires that users verify that s/he is providing accurate and truthful information." Ex. C at 13.

Similarly problematic are Defendant's contentions that the requests for admission seek legal conclusions. Whether Defendant sent—or caused to be sent[5]—more than one text message to Plaintiff's telephone number within a 12-month period is a purely factual question. *See, e.g.*,

---

[5] Defendant's repeated insinuation that it did not "send" the text messages at issue is a non-starter as the statute only requires that a message be sent "by or on behalf of" Defendant, not that it actually initiate the call or text message.

11

*Gurzi v. Penn Credit, Corp.*, No. 619CV823ORL31EJK, 2019 WL 8273647, at *2 (M.D. Fla. Dec. 30, 2019) (overruling similar objections, and noting that "[t]hese RFAs do not ask Defendant to admit purely legal conclusions."). This is also true for the requests for admission that ask: "Admit that Plaintiff did not provide express written consent to Defendant to send text messages to telephone number (312) 283-[XXXX]." Ex. D at 5; *but see Hilton v. IC Sys., Inc.*, No. 616CV1366ORL40TBS, 2017 WL 3118531, at *3 (M.D. Fla. July 21, 2017) (overruling objection that "Admit that Plaintiff never provided Defendant with express written consent to call Plaintiff's wireless phone" calls for a legal conclusion, because "[t]hese requests concern facts, not legal conclusions.").

And Defendant's self-serving confusion about the meaning of the word "sent" does not hold water, particularly given that Plaintiff subsequently clarified to Defendant:

> To the extent that Defendant does not understand what it means to "send" a text message to a telephone number, or to cause another to "send" a text message to a telephone number, Plaintiff notes that these requests encompass text messages Defendant directed a third-party vendor to send on its behalf.

Ex. E at 8.

As a result, this Court should compel Defendant to fully respond to Plaintiff's requests for admission.

### IV. This Court should compel Defendant to produce information regarding Plaintiff's proposed class.

As is the case for Plaintiff's individual claims, Defendant utterly fails to answer or respond to a single discovery request concerning Plaintiff's proposed class, hiding behind a mix of boilerplate general objections, an "investigation" continues recitation, and, paradoxically, a claim that Plaintiff is already in possession of class data. *See, e.g.*, Ex. C, Answers to Interrogatory Nos. 11-12. These objections are not made in good faith, and this Court should overrule them.

12

### A. The discovery sought is highly relevant to the elements of class certification, and thus should be produced.

The production of call or text message logs and dialer data—much of the information at issue in interrogatory Nos. 8-14, and request for production Nos. 7-14—is standard practice in TCPA class litigation because of its relevance to the numerosity, commonality, typicality, and predominance requirements of Rule 23. *See, e.g.*, *O'Shea v. Am. Solar Sol., Inc.,* No. 14CV894-L (RBB), 2016 WL 701215 (S.D. Cal. Feb. 18, 2016) ("Upon reviewing requests 9, 28, 29, and 30, the Court agrees that the documents sought are relevant to his action. Specifically, these requests generally concern the total number of call recipients and the total number of phone calls made to them."); *Cahill v. GC Servs. Ltd. P'ship*, No. 3:17-cv-01308-GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) ("RFPs 10-13 and 18 are relevant at least to the issues of numerosity and commonality. The lists are reasonably calculated to identify the number of recipients of calls made during the class period, which is crucial to determine whether the class is so numerous to make joinder impracticable. The call lists are also relevant to the commonality requirement under Rule 23(a), for which plaintiff must show the class 'suffered the same injury ... such that the ... class claims will share common questions of law or fact' with those of the named plaintiffs.'"); *Gossett v. CMRE Fin. Servs.*, 142 F. Supp. 3d 1083, 1087 (S.D. Cal. 2015) (granting a motion to compel production of outbound call lists, as such lists were "relevant to the class claims and meritorious claims and defenses in this case"); *Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) (compelling the production of call data because "the Court agrees with the weight of authority on this matter that call logs and dialing lists are relevant to the commonality prong of the class certification inquiry. The requested list would also be relevant to Plaintiff's need to show numerosity.") (internal citation omitted); *Webb v. Healthcare Revenue Recovery Grp. LLC*, No. C. 13-00737

RS, 2014 WL 325132, at *2-3 (N.D. Cal. Jan. 29, 2014) (compelling production of outbound call lists).

> As the Northern District of Illinois explained:
>
> Moreover, the information plaintiff seeks in the contested first and second requests for production is clearly relevant to class discovery; specifically, to the issues of numerosity, commonality, and typicality. As explained above, plaintiff proposes a class of persons who received faxed advertisements without a proper opt out notice, with whom Quill did not have an EBR, and from whom Quill did not have prior express permission or invitation to send such faxes (Compl. at ¶ 20). Plaintiff's requests seek, for example, copies of all faxed advertising documents, documents showing express permission or invitation to receive such faxes, and documents indicating an EBR with the recipients of the facsimiles.
>
> As we made clear to Quill in multiple court hearings, the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified.

*Whiteamire Clinic, P.A. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013); *see also Ossola v. Am. Express Co.*, No. 13 C 4836, 2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015) ("Call data is relevant, and thus produced as standard practice . . . in cases where the defendant is the alleged dialer.").

In the same vein, "[o]utbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable." *Thomas v. Fin. Corp. of Am.*, No. 3:19-CV-152-E, 2019 WL 5157022, at *1 (N.D. Tex. Oct. 10, 2019) (compelling the production of materially similar data sought here); *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017) ("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable."); *see also Gaines v. Law Office of Patenaude & Felix, A.P.C.*, No. 13CV1556-JLS DHB, 2014 WL 3894348, at *2 (S.D. Cal. June 12, 2014) ("the Court finds that the

outbound dial list is relevant to the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a), and is therefore discoverable").

Not surprising, then, is that courts across the country routinely compel TCPA class action defendants to provide analogous information about the size of proposed classes and produce lists of telephone numbers associated with potential members of the proposed classes. For example, in *Bonoan v. Adobe, Inc.*, the Northern District of California granted the plaintiff's motion to compel answers to a number of interrogatories intended to elicit information regarding the size of the proposed class under the TCPA. Of note, the discovery requests at issue in *Bonoan* are similar to the requests at issue here:

> 9. Identify the number of unique telephone numbers to which Defendant made, or caused to be made, calls, by using an automatic telephone dialing system, a predictive dialer, or an artificial or prerecorded voice.
>
> 10. Identify the number of unique telephone numbers to which Defendant made, or caused to be made, calls, by using the hardware or software Defendant used to place, or cause to be placed, calls to Plaintiff, or to (281) 546-9685.
>
> 11. For the telephone numbers Defendant identifies through its answers to Interrogatory Nos. 9-10, for how many of them do Defendant's records show that a called party was not the person Defendant intended to reach by placing a call to one of the telephone numbers, or that a person associated with one of the telephone numbers indicated that Defendant contacted the wrong person or telephone number?
>
> 12. For the telephone numbers Defendant identifies through its answers to Interrogatory Nos. 9-11, to how many of them did Defendant place, or cause to be placed, a call by using an automatic telephone dialing system, a predictive dialer, or an artificial or prerecorded voice, after Defendant's records showed that a called party was not the person Defendant intended to reach by placing a call to one of the telephone numbers, or that a called party indicated that Defendant contacted the wrong person or telephone number.
>
> 13. For the telephone numbers Defendant identifies through its answers to Interrogatory Nos. 9-11, to how many of them did Defendant place, or cause to be placed, a call by using the hardware or software Defendant

> used to place, or cause to be placed, calls to Plaintiff, or to (281) 546-9685, after Defendant's records showed that a called party was not the person Defendant intended to reach by placing a call to one of the telephone numbers, or that a called party indicated that Defendant contacted the wrong person or telephone number.

14. For the telephone numbers Defendant identifies through its answers to Interrogatories Nos. 9-13, how many of them were, or do Defendant's records indicate were, assigned to a cellular telephone service during the relevant time period?

*Compare* No. 3:19-cv-0168-RS, ECF No. 47-1 at 11-15 (N.D. Cal. Oct. 4, 2019) (the plaintiff's interrogatory nos. 9-11), *with id.* at ECF No. 55 at 2 ("The Court ORDERS that Defendant provide substantive answers to all Interrogatories other than 5, 10, 15 and 16 by October 31, 2019."), *with id.*, ECF No. 68 at 1 ("The Court ORDERS that Defendant must provide responses to Interrogatories Nos. 10, 11, 13 and 14.").

Also analogous, in *Bellenger v. Accounts Receivable Mgmt., Inc.*, the Southern District of Florida granted the plaintiff's motion to compel responses aimed at identifying the potential size of the plaintiff's proposed class under the TCPA, as well as a list of telephone numbers associated with potential members of the proposed class:

> In Requests for Production Nos. 15 and 16, the Plaintiff sought documents "identifying or listing the telephone numbers to which [the Defendant] placed any DIALED CALL to a cellular telephone at any time on or after January 23, 2015," or documents "that record or list every DIALED CALL" made by the Defendant during that same time period, including all documents that "identify, reflect and/or evidence the number of times each such telephone number was called." (ECF No. 21-3) The Defendant objected to these requests as overbroad, because the requests were not limited to calls placed to "wrong parties," and also stated that the requested information includes personal health information; these objections are overruled, for the reasons discussed above.

\* \* \*

> Requests for Production Nos. 17 and 18 sought documents listing every person who received a call since January 23, 2015, and who informed the Defendant that: 1) the person did not wish to be called, or 2) that the Defendant had called a wrong number, or 3) that the person did not have a contract with the Defendant, and also a list of every call made to any person <u>after</u> they had provided one of the

16

>three responses above. The Defendant objected that the request was overbroad because it is not limited to cellular phones and also includes people outside the proposed class because those who did not wish to be called or who did not have a contract with the Defendant are not "wrong parties." For the reasons stated above, the Defendant's objections as to the cellular phone designation and the "wrong parties" are overruled.
>
>The Defendant also argues that Requests Nos. 17 and 18 are overbroad because they seek information that has no bearing on whether the Defendant had prior express consent to make the calls, but the Defendant cites no precedent for such a determination. The Court overrules the Defendant's objection because if the Defendant intends to pursue its defense that it had the prior express consent of those called, then it must produce the evidence on which it will rely. "[A]t this stage of the proceeding, [the Defendant] must produce whatever evidence of prior express consent it will use to rebut [the Plaintiff's] attempt to establish predominance under Federal Rule of Civil Procedure 23(b)(3) so the issue can fully be litigated during the class certification phase of this case." *See, e.g.*, *Medina v. Enhanced Recovery Company, LLC*, No. 15-14342-CIV-MARTINEZ/MAYNARD, 2017 WL 5196093, *8 (S.D. Fla. Nov. 9, 2017).
>
>In summary, the Defendant's objections addressed above each are overruled, and the Plaintiff is entitled to the information she seeks.

No. 19-60205-CIV, 2019 WL 4284070, at *5-6 (S.D. Fla. Sept. 10, 2019).

For the same reasons, this Court should compel Defendant to respond completely to all of the class discovery requests at issue.

### B. The discovery sought is highly relevant to establishing class-wide damages, and thus should be produced.

Pertinent here, the TCPA states that a plaintiff may bring "an action to recover for actual monetary loss from [a violation of the TCPA's DNC rules], or to receive up to $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(c)(5)(B).

Because courts calculate damages under the TCPA based on the number of violations—in this case, the number of solicitation text messages delivered within a 12 month period, after the first text message—discovery regarding the number of text messages Defendant delivered is highly relevant to Plaintiff's damages and to those of absent class members. For this additional

reason, the call data Plaintiff seeks is highly relevant and this Court should compel its production.

## Conclusion

Because "[o]ur entire civil justice system is dependent on accurate and truthful discovery," "the importance of accurate and truthful discovery to the civil justice system cannot be overstated." *Murray v. Conseco, Inc.*, No. 1:03-CV-1701-LJM-JMS, 2008 WL 5635955, at *4 (S.D. Ind. Nov. 5, 2008) (internal citation omitted), *objections sustained in part and overruled in part,* No. 1:03-CV-1701-LJM-JMS, 2009 WL 363803 (S.D. Ind. Feb. 6, 2009).

That is, "[c]ivil litigation is not a game of hide-the-ball." *Santiago v. Furniture Chauffeurs, Piano Movers, Packers, & Handlers Local 705*, No. 99 C 2886, 2001 WL 11058, at *7 (N.D. Ill. Jan. 4, 2001). And "[d]iscovery is n[either] a game in which each party plays a card and waits for the opponent's and the court's response before deigning to release another," *see Computer Acceleration Corp. v. Microsoft Corp.*, No. 9:06-CV-140, 2007 WL 2584827, at *1 (E.D. Tex. Aug. 28, 2007), nor "a game of cat and mouse, of continual pursuit and near capture by one party and endless escape by the other." *King v. Dillon Transp., Inc.*, No. CV411-028, 2012 WL 592191, at *3 (S.D. Ga. Feb. 22, 2012) ("It is intended to be a self-executing, extrajudicial exercise that depends upon the parties' careful attention to and compliance with the rules.").

This Court should compel Defendant to meaningfully participate in the discovery process. Accordingly, Plaintiff respectfully requests that this Court grant his motion to compel in its entirety.

Date: June 29, 2021											Respectfully submitted,

*/s/ Michael L. Greenwald*
Michael L. Greenwald
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
Telephone: 561.826.5477
mgreenwald@gdrlawfirm.com

*Counsel for Plaintiff and the
proposed class*

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2021, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Michael L. Greenwald*
Michael L. Greenwald