**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| JOHN FRALISH, *on behalf of himself and others similarly situated*, | |
| Plaintiff, | |
| v. | CASE NO. 3:21-CV-00045-JD-MGG |
| DIGITAL MEDIA SOLUTIONS, INC., | |
| Defendants. | |

**ORDER**

Pending and ripe before the Court is Plaintiff's Motion to Compel Production of Documents, Answers to Interrogatories, and Responses to Requests for Admission filed on June 29, 2021. For the reasons discussed below, Mr. Fralish's Motion to Compel is granted in part and denied in part.

**I.    RELEVANT BACKGROUND**

In May 2019, Plaintiff, John Fralish, registered his cell phone number with the Federal Do Not Call ("DNC") registry. [DE 1 at 13]. From March 18, 2020, to January 10, 2021, Mr. Fralish received more than ninety text messages from short code numbers[1] 62178, 57819, 80234, and from telephone numbers (608)315-4797 and (872)249-9934. [DE 1 at 14–22]. All of these text messages were directed to an individual named "Shaniko," a name with which Mr. Fralish has no association. [DE 1 at 39].  Short code 62178 is assigned the vanity short code "SimplyGigs," short code 57819 is assigned the vanity

---

[1] *Frequently Asked Questions*, SHORT CODE REGISTRY, https://www.usshortcodes.com/learn-more/faq ("A short code is a five- or six-digit number that can be used to send and receive text messages.").

short code "SearchMyNewJob," and short code 80234 is assigned the vanity short code "DigitalMedia." [DE 23–25]. Some of the links in messages delivered by short codes 57819, 80234, 62178, and telephone numbers (608)315-4797 and (872)249-9934 redirect to websites operated by Defendant Digital Media Solutions, Inc. ("Digital"). [DE 1 at 29–37]. Mr. Fralish did not give prior express consent for Digital to send text messages to his cell phone number. [DE 1 at 38, 47].

On January 11, 2021, Mr. Fralish, in response to text messages he received from short codes 57819 and 62178, sent "STOP, you have the wrong number." [DE 1 at 42]. Shortly thereafter, on January 20, 2021, Mr. Fralish filed the instant class action lawsuit on behalf of himself and members of his class in this Court, seeking class damages and an injunction against Digital from continuing to deliver solicitous texts to himself and members of his class registered with the DNC Registry for at least 30 days.

In his complaint, Mr. Fralish contends that Digital violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by delivering dozens of advertising or marketing messages to a cellular telephone number registered with the National DNC without prior express consent. [DE 1 at 2]. Mr. Fralish alleged that these were non-emergency communications meant to promote Digital's goods and services. [DE 1 at 44, 46]. Mr. Fralish also asserts that he is the representative of the following class:

> All persons throughout the United States (1) to whom Digital Media Solutions Inc. delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Digital Media Solutions Inc.'s goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Digital Media Solutions Inc. delivered, or caused to be delivered, at least two of the text messages within

the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

[DE 1 at 51].

Mr. Fralish propounded the discovery requests at issue in the instant Motion to Compel to Digital on April 8, 2021. After receiving Digital's responses and objections to his first set of discovery requests on May 10, 2021, Mr. Fralish sent Digital a Rule 37 conferral letter on May 20, 2021, identifying certain deficiencies and inconsistencies in Digital's discovery responses. [DE 17-5 at 1–9]. Mr. Fralish has followed up several times with Digital but did not receive a response. [DE 17 at 4]. As a result, on June 29, 2021, Mr. Fralish filed the instant Motion to Compel discovery responses. Mr. Fralish first alleges that Digital has not produced any documents in response to his Request for Production. Next, he argues that Digital provided incomplete answers to Interrogatories 1, 5, 6, and 15–16, and did not substantively respond to Interrogatories 2–4, 7–14, or 17–18. Finally, Mr. Fralish contends that Digital's responses to his Requests for Admission are composed of invalid objections and reflect a lack of good faith.

Digital filed Supplemental Responses and Objections to Mr. Fralish's first Interrogatories, Request for Production, and Requests for Admission on July 23, 2021. In its brief in response to the instant Motion filed on August 25, 2021, Digital asserts that its diligent, good faith efforts to address the issues Mr. Fralish identified in its initial responses have thus mooted any dispute. [DE 28 at 1]. Accordingly, Digital argues that because it revised its responses as to all Requests for Admission, the dispute is moot as to these requests. However, Digital objected to Requests for Production Nos. 7–12, 34

3

and Interrogatories 7–12, as overbroad. [DE 28 at 4–7]. It further claimed as irrelevant Requests for Production Nos. 6, 13–19, 21–31, 35, 37–38 and Interrogatories 2, 13 –14, 17–18. [DE 28 at 9–10, 12]. Moreover, Digital objected to all requests seeking information on the hardware or software it uses to send the text messages, claiming that putative third parties sent them, and it is not in possession of any relevant documents and information responsive to the requests. [DE 28 at 11].

On September 1, 2021, Mr. Fralish filed a reply in support of his Motion to Compel. [DE 29]. While Mr. Fralish acknowledges that Digital had produced some responses, he asserts that Digital's responses remain substantially incomplete and do not constitute a good faith effort to answer the discovery requests. [DE 24 at 1]. Consequently, Mr. Fralish contends that Digital's inadequate responses do not moot his Motion to Compel and requests that the Court order Digital to respond to and produce the following disputed discovery items without general objections: RFP Nos. 2–20, 21–23, 27, 29, 31, 34–35, 37–38 and Interrogatories 2, 4, 7, 8–14. [DE 29 at 15].

While Mr. Fralish develops arguments as to most of the 39 discovery requests delineated in his Motion, some were conspicuously left out of his analysis. Mr. Fralish developed no arguments as to why the Court should compel further production from Digital related to his Requests for Admissions[2] or RFPs 2, 3,4, and 20. Yet Mr. Fralish developed arguments as to ROGs 15–18 without having identified them as in dispute in the introduction to his Motion. As undeveloped arguments are waived, this Court will

---

[2] While Mr. Fralish references his Requests for Admission in the title of his Motion, he includes no discussion of the RFAs in the analysis section of his Motion and makes no specific prayer for relief related to the RFAs in the conclusion section of his Motion.

only address specific discovery disputes for which Mr. Fralish developed arguments. *See Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point."). Accordingly, the Court will consider Mr. Fralish's arguments as to ROGs 15–18 but finds that he has waived any argument for further production related to his Requests for Admission and RFPs 2, 3, 4, and 20.

## II.   ANALYSIS

### A.   Legal Standard

#### 1.   Motion to Compel

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When an opposing party has failed to respond to discovery requests or has provided evasive or incomplete responses to requests, a party may file a motion to compel. Fed. R. Civ. P. 37(a). When addressing motions to compel filed under Fed. R. Civ. P. 37(a), the court has broad discretion and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *See* Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495–96 (7th Cir. 1996). "[A] district court should independently determine the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496.

In discovery, what is relevant includes more than what is admissible at trial. Instead, relevant matter includes "anything that appears reasonably calculated to lead

the discovery of admissible evidence." *Barker v. Life Ins. Co. of N.Am.*, 265 F.R.D. 389, 393 (S.D. Ind. 2009) (internal citation omitted). Given the liberal scope of discovery under Fed. R. Civ. P. 26(b), "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Gingerich v. City of Elkhart Prob. Dep't*, 273, F.R.D. 532, 536 (N.D. Ind. 2011) (internal citations omitted). Nevertheless, "the proponent of a motion to compel discovery still bears the initial burden of proving that the information sought is relevant." *United States v. Lake County Bd. of Comm'rs*, No. 2:04 CV 415, 2006 WL 978882, at *1 (N.D. Ind. Apr. 7, 2006) (internal quotation omitted); *see also United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993) ("Since the documents at issue are not relevant to the controversy before us, Farley cannot, as a matter of law, make a showing of need."); *Greenbank v. Great Am. Assurance Co.*, No. 3:18-cv-00239-SEB-MPB 2019 WL 6522885, at *3 (S.D. Ind. Dec. 4, 2019) ("A party moving to compel production carries the initial burden of establishing, with specificity, that the requested documents are relevant.") (emphasis in original).

If a party does choose to file a motion to compel, the filing party "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Under this Court's Local Rules, such certification must be filed separately and include specific information including "the date, time, and place of any conference or attempted conference; and the names of the parties participating in the conference." N.D. Ind. L.R. 37-1(a)(1)–(2). "The court may deny any [discovery-related] motion . . . if the required certification is not filed." N.D. Ind. L.R.

37-1(b). Local Rule 7-1(b)(2) also requires parties to file a supporting brief with any Rule 37 motion it files.

Here, the parties disagree as to whether Digital has complied with its discovery obligations. [DE 29 at 2–3]. Mr. Fralish contends that Digital recites general objections throughout its responses and inappropriately objects to Mr. Fralish's requests regarding information that is relevant both to Mr. Fralish's individual claims as well as information that is vital to the certification of Mr. Fralish's proposed classes. Mr. Fralish argues that Digital's approach to discovery amounts to an effective filibuster of this litigation. [DE 17 at 1]. On the other hand, Digital asserts that it has supplemented a significant amount of its discovery responses, that its remaining objections to Mr. Fralish's requests are valid, that his requests were overbroad, and that it did not send text messages to him itself. [DE 28 at 1–2]. Although Mr. Fralish made a good faith attempt to address many of these disputes through his multiple requests to meet-and-confer with Digital pursuant to the Federal Rules of Civil Procedure as well as this Court's Local Rules, Digital refused to respond to him. *See* Fed. R. Civ. P. 37(a)(1); N.D. Ind. L.R. 37-1(a)(1)–(2). Thus, these disputes remain unresolved and will be addressed in turn.

## 2.   47 U.S.C. § 227(c)

Section 227(c) of Title 47 of the United States Code directs the Federal Communications Commission ("FCC") to set forth regulations meant to establish and enforce a national DNC database of individuals who object to receiving telephonic solicitations. Pursuant to this direction, the FCC implemented regulations making it

unlawful for an entity to telephonically solicit a telephone number listed on the national DNC. 47 C.F.R. § 64.1200(c). Section 227(c) also grants a private right of action to an individual who has received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [47 U.S.C. § 227(c)]." 47 U.S.C. § 227(c)(5). The purpose of this subsection is to "protect residential telephone subscribers' privacy right to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The term "telephone solicitation" is defined in both the statute and the regulation as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person," but does not include a call or message made "to any person with that person's prior express invitation or permission." 47 USC § 227(a)(4); 47 C.F.R. § 64.1200(f)(15)(i).

### B.   Discussion

#### 1.   Digital's General Objections

Mr. Fralish argues that Digital's responses to his Requests for Production and Interrogatories are incomplete . [DE 29 at 3]. Specifically, Mr. Fralish claims that Digital incorporates pages of either general or more specific objections into each of its supplemental discovery responses and responds subject to these objections. [*Id.* at 4]. Mr. Fralish argues that this renders Digital's responses impermissibly incomplete and unclear. [*Id.*].

When a party objects to an interrogatory, that objection must be stated with specificity. Fed. R. Civ. P. 33(b)(4). Furthermore, when objecting to a production

request, the objecting party must "state with specificity the grounds for objecting to the request, including reasons." Fed. R. Civ. P. 34(b)(2)(B). Thus, general objections that recite boilerplate language without explanation of how they apply to specific discovery requests do not meet this burden. *See Barker v. Kapsch Trafficcom USA, Inc.*, No. 1:19-cv-00987-TWP-MJD, 2019 WL 8301693, at *2 (S.D. Ind. Aug. 30, 2019). Accordingly, the Seventh Circuit routinely overrules these types of objections. *Id.*

Here, Digital incorporates multiple pages of general objections as well as various individual boilerplate objections into its responses to Mr. Fralish's Interrogatories, Requests for Production, and Requests for Admission. Digital listed fifteen general objections in its initial response to Mr. Fralish's Interrogatories, fifteen general objections to his Requests for Production, and ten general objections to his Requests for Admission. [DE 17-3 at 3–5; DE 17-2 at 3–5; DE 17-4 at 3–4]. Digital also incorporated these general objections into every supplemental response and objection to Mr. Fralish's discovery requests as well. [DE 28-1 at 3–5; DE 28-2 at 3–5; DE 28-3 at 3–4].

Yet, Digital's general objections do not state specific grounds for the objections as required by Federal Rules 33 and 34. Digital's general objections lack any assertion as to why they are appropriate responses to Mr. Fralish's discovery requests and fail to identify which general objections are applicable to which discovery requests. "[G]eneral objections made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered." *Novelty, Inc. v. Mt. View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009); *see also, e.g., Beverly v. Depuy Orthopaedics, Inc.*, No. 3:07-CV-137 AS, 2008 WL 45357, at *5

(N.D. Ind. Jan. 8, 2008) (compelling discovery in part because the defendant failed to explain why given objections applied to any discovery request and failed to identify which discovery requests the general objections targeted).

Digital also incorporated other general objections, which Mr. Fralish labels as "specific boilerplate objections," into its discovery responses. For example, in multiple responses, Digital objects to certain interrogatories as requesting information that Mr. Fralish already possesses or is in a third party's possession but without any argument or evidence to support its assertion. [DE 28-1 at 5, 6, 7]. Mr. Fralish has specified in his briefing on the instant Motion that he finds incomplete, unclear, or otherwise improper each of Digital's forty general, boilerplate objections. [DE 29 at 3]. Thus, he asks this Court to overrule Digital's general objections and order it to provide renewed discovery responses absent the generic and inappropriate "generic objections." [*Id.*]. Mr. Fralish's request is well-taken.

Courts in this Circuit have repeatedly admonished the objecting litigant that the "[the discovery objection] burden cannot be met by 'a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Medical Assur. Co. v. Weinberger*, 295 F.R.D. 176, 182 (N.D. Ind. 2013) (quoting *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009)); *Burkybile v. Mitsubishi Motors Corp.*, No. 04 C 4932, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006); *see Swift v. First USA*, No. 98-8238, 1999 WL 1212561, at *7 (N.D. Ill. Dec. 15, 1999).

Despite these repeated admonitions, this is precisely what Digital has done here with its forty general objections. Digital's objections lack particularity and rely on redundant boilerplate verbiage. Accordingly, Digital's forty general objections [DE 28-1 at 3–5; 28-2 at 3–5; 28-3 at 3–4] are waived. *See Kelley v. Bd. of Educ. of City of Chicago*, No. 10 C 7875, 2012 WL 1108135, at *2 (N.D. Ill. Apr. 2, 2012) ("The defendant's *ipse dixit* recitation of boilerplate objections is thereby waived because such responses are improper."); *United Auto Ins. v. Veluchamy*, No. 09 C 5487, 2010 WL 749980, at *5 (N.D. Ill. Mar. 4, 2010) (waiving objections because boilerplate responses are improper); *see Fudali v. Napolitano*, 283 F.R.D. 400, 403 (N.D. Ill. 2012) (finding that boilerplate objections are "tantamount to not making any objection at all") (citation omitted). Accordingly, this Court concludes that Digital's general objections are inappropriate.

### 2.      Request for Production Nos. 6, 15–19, 22, 23 and 38

Through RFPs 6, 15–19, 22, 23, and 38, Mr. Fralish seeks information generally relating to Digital's policies and procedures, and particularly, its consent and compliance practices. More specifically, RFP 6 requests Digital's methodology for documenting its communications with Mr. Fralish; RFP 15 seeks information regarding Digital's methodology for determining whether a telephone number is a cellular telephone number; RFP Nos. 16–19 seek additional practices and procedures Digital uses to comply with the TCPA; RFP 22 solicits Digital's document retention and destruction policies; RFP 23 requests the production of Digital's records of prior consumer complaints; and RFP 38 concerns Digital's internal do-not-call list. Digital contends that each of these discovery requests is irrelevant. Indeed, Digital broadly

11

objects to the information sought, arguing that this is information "for which [Mr. Fralish] has no need and that are otherwise irrelevant to either his TCPA claims or Digital's defenses thereto." [DE 28 at 9]. On these grounds, Digital did not produce the requested information. Mr. Fralish contends that, to the contrary, the documents directly pertain to his claims, to potential class members' claims, and to Digital's affirmative defenses. As such, Mr. Fralish asks the Court to compel complete responses to Request for Production Nos. 6, 15–19, 22, 23 and 38.

First, Mr. Fralish is entitled to investigate the thoroughness of Digital's recordkeeping as the quality of those records does have implications for his claims, and those of proposed class members. Indeed, the information requested in RFP Nos. 6, 16–19, 22, 23 and 38 is directly relevant to whether Digital violated Section 277(c) by directing more than one telephonic communication at Mr. Fralish within a twelve-month period despite his participation in the DNC registry.

Next, the information requested is directly pertinent to Digital's affirmative defenses because the TCPA affirmative defense is only available if "the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under [subsection (c)]." 47 U.S.C. § 227(c)(5)(C). Establishing this affirmative defense involves an evaluation of any practice Digital employed to send text messages themselves or to direct others to send text messages. Thus, the functionality of any system, as well as the consent practices involved in the operation of the system used to deliver, or caused to be delivered, the text messages to Mr. Fralish is pertinent to

12

whether Digital is precluded from liability. Hence, the information requested in RFP

Nos. 6, 15–19, 22, 23 and 38 would bear directly on Digital's Section 227(c) affirmative

defense for establishing practices and procedures to prevent telephonic solicitations in

violation of the regulations prescribed by statute. *See id.*. The accuracy and

thoroughness of Digital's records are potentially relevant to the determination of

whether it accurately tracks if it has consent to contact consumers, the number of

communications with those consumers, and, consequently, the merits of its affirmative

defenses. Thus, Digital has not met its burden to support its objection to RFP 6, 16–19, 22, 23

and 38.

### 3.      Interrogatory 4 and Request for Production 5

Through Interrogatory 4 and RFP No. 5 Mr. Fralish seeks information regarding

Digital's dialing system and consent practices. Digital, however, objected to these

requests on the grounds the information is out of the scope of discovery, does not

sufficiently bear on the elements of a claim brought under 42. U.S.C. § 227(c) and is thus

not pertinent to this case. [DE 28 at 11]. In support, Digital relies upon two distinct

causes of action under the TCPA: Section 227(b) and Section 227(c).

Section 227(b) makes it illegal for an individual to call or text another

individual's cell phone via an ATDS[3] without the recipient's prior express consent. 47

U.S.C. § 227(b)(1). Plaintiff's complaint, however, only raises a claim under Section

227(c), which makes it illegal for the same entity to send more than one call or text to a

---

[3] The TCPA defines ATDS as "equipment which has the capacity—(A) to store or produce telephone
numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47
U.S.C. § 227(a)(1).

telephone number listed in the DNC list within a 12-month period. [DE 1 at 2 (citing 47 U.S.C. § 227(c)(5))]. According to Digital, Interrogatory 4, and RFP 5 seek information that would only be relevant to a claim brought under Section 227(b) and, as such, is irrelevant for the purposes of this case. [DE 28 at 11]. Specifically, Digital argues that, because a claim under Section 227(c) is made by claiming that an individual received multiple messages from the same entity in a twelve-month period, the way that those text messages were sent is irrelevant to the elements of a claim brought under 227(c). [DE 28 at 11]. Yet, Digital's argument here is conclusory.

The elements of a claim brought under Section 227(b) are clearly different than the elements of a Section 227(c) claim. However, claims made under both sections relate to the type and frequency of unwanted solicitous telephonic communications made to individuals and some evidence relevant to both types of claims may overlap. Further, the systems and consent practices involved in the sending of text messages at issue in Interrogatory 5 and RFP 5 are relevant to Mr. Fralish's Section 227(c) claim because this information bears directly on whether Digital potentially violated Section 227(c) by directing more than one telephonic communication at Mr. Fralish within a 12-month period despite his participation in the DNC registry.

Moreover, Mr. Fralish has shown that the requested information is relevant to the statutory TCPA affirmative defense potentially available to Digital. Digital could possibly use the defense if it is able to adequately establish that it had implemented reasonable procedures and precautions to prevent the types of telephone solicitations Mr. Fralish has accused it of. *See* 47 U.S.C. § 227(c)(5)(C). Therefore, this information is

important as it could possibly exclude Digital from liability. Accordingly, Digital's objections are overruled, and Mr. Fralish is entitled to substantive answers regarding Interrogatory 4 and RFP 5.

>    **4.    Interrogatories 2, 17–18 and RFP Nos. 21, 24–27, 28, 30, 31, and 37**

In response to Interrogatories 2, 17–18 and RFP Nos. 21, 24–27, 28, 30, 31 and 37 Digital objected to Mr. Fralish's requests for information regarding its business structure, relationships and website, phone number, and short code relationships as they relate to the sending of text messages on the grounds of irrelevance, overbreadth, and undue burden. [DE 28 at 10–11].

To start, Digital has not demonstrated with the requisite specificity why Mr. Fralish requests for information about their business relationships regarding the sending of text messages is improper here. *See Gingerich*, 273 F.R.D. at 536. Digital argues irrelevance and undue burden, but states nothing more. For instance, with regard to relevance, Digital merely states that "DMS's business relationships, relationships with certain websites, and relationships with certain phone numbers and short codes are not relevant to Mr. Fralish's individual claims or those of the proposed class." [DE 28 at 10]. And, concerning undue burden, Digital provides no data, and does not attempt to quantify of the unreasonable burden posed: "The irrelevance of this Request and the prejudice that the Defendants would likely suffer by disclosing the information outweighs any need the Plaintiff may claim to have for this information." [DE 28 at 11]. Thus, while it hints at problems, Digital fails to do so with any detail

whatsoever. Having unsuccessfully developed either a relevance or undue burden argument, Digital has waived both arguments. *See Smith*, 388 F.3d at 569.

Moreover, Mr. Fralish's contention that Digital's business operations are relevant to this case is persuasive precisely because Digital maintains that the text messages sent to Mr. Fralish were sent by a third party. [DE 28 at 10]. Indeed, Section 227(c) authorizes TCPA claims by individuals who received solicitous text messages "within any 12-month period *by or on behalf of* the same entity." 47 U.S.C. § 227(c)(5) (emphasis added). Thus, the requested business operations information is relevant to the extent it identifies the party or parties physically sending the text messages at issue and Digital's role in directing the text messages regardless of who actually sent them.

With that said, RFP 21 is still overbroad. RFP 21 requests production of documents and electronically stored information "sufficient to identify any vendors or other third parties who sent, or caused to be sent, text messages, on behalf of Defendant, to Plaintiff. "[DE 28-2 at 17]. RFP 21 does not limit the scope of the requested text messages in any way even though Mr. Fralish's Section 227(c) claim only concerns a specific type of text message sent to a specific type of person. Mr. Fralish's complaint alleges that "Digital routinely and systematically violates 47 C.F.R. § 64.1200(c), and, in turn 47 U.S.C. § 227 (c)(5), by delivering more than one *advertisement or marketing text message* to residential or cellular telephone numbers registered with the National Do-Not-Call registry." [DE 1 at 1 (emphasis added)]. As written, RFP 21 demands production of information pertaining to text messages beyond the scope of advertisement and marketing messages he challenges in this case and other irrelevant

16

aspects of the business relationship between Digital and an unknown number of third parties.

The language of Interrogatories 2, 17–18, and Request for Production Nos. 24, 25, 26, 27, 28, 29, 30, 31, and 37, on the other hand, appropriately limit production of information regarding Digital's related business relationships to specific short codes (Interrogatories 17–18, RFP 24), to specific telephone numbers (Interrogatories 17–18, RFP 25),to specific websites or third parties (Interrogatory 2, RFP 28, 29, 30, 31, 37), and to the more specific categories of "advertising" and "telemarketing" text messages (RFPs 26, 27). Therefore, Mr. Fralish has reasonably restricted the scope of these discovery requests such that they are not overbroad.

Digital has merely announced that all of Mr. Fralish's requests relating to its business relationships are overbroad without developing any further argument. Thus, Digital's objections are so vague as to be meaningless. In fact, Digital has arguably waived the overbreadth arguments by failing to develop them further. *See United States v. Parkhurst*, 865 F.3d 509, 524 (7th Cir. 2017).

Thus, Digital must now produce information responsive to Interrogatories 2, 17–18, RFP Nos. 21, 24–37 but limited to "advertising" and "telemarketing" text messages. Without further argument from Digital, those terms speak for themselves. To the extent Digital requires clarification, it shall meet and confer with Mr. Fralish—an opportunity Digital did not take before this Motion was filed despite Mr. Fralish's multiple attempts. Any disputes remaining after a good faith resolution effort may be addressed to the

Court via motion within the confines of the Federal Rules, the Local Rules, and the Court's Scheduling Order, as amended.

### 5. Class Related Data

While Mr. Fralish contends that "[he] is entitled to class-related data," [DE 24 at 8], he fails to specify which discovery items he considers constitute his "class-related requests." However, both Mr. Fralish and Digital reference Interrogatories 7–16 and RFPs 7–14, 17, 19, 34–35 when discussing Mr. Fralish's claims regarding the putative class. [DE 28 at 3–9; DE 29 at 9–11]. Without more, the Court can only assume that the parties' disputes relating to class-related data pertain to these identified discovery requests.

### a. ROGs 7–16 and RFPs 7–14, 17, 19 and 34–35

Through these discovery requests, Mr. Fralish seeks two general categories of class-related data. First, Mr. Fralish's ROGs 8–14 and RFPs 7–10, 14 request information quantifying the telephone numbers or individuals to which Digital sent or caused to be sent text messages and identifying those individuals, as well as data quantifying the number of text messages sent to those class members. [DE 28-1 at 8–14; DE 28-2 at 9–240]. According to Mr. Fralish, this information is relevant to the commonality, numerosity, typicality, and predominance requirements of Rule 23, and is routinely produced in TCPA class litigation. [DE 17 at 15].

Second, Mr. Fralish's Interrogatories 15–16, RFP Nos. 7, 11–12, 34–35 request information regarding the consent of the putative class members. For instance, RFPs 7, 34–35 request evidence of prior express written consent from class members, including

Mr. Fralish (RFP 7). [DE 28-2 9, 23–24]. RFPs 11–12 ask for the number of class members who evidenced an absence of consent, or replied with "wrong number," or "stop" notations to the text messages at issue. [DE 28-2 at 11–12]. Interrogatories 15–16 seek information regarding Digital's methods for confirming that class members are on the DNC list. [DE 28-1 at 13–14]. Mr. Fralish requests this information evidencing consent from putative class members to send them text messages, which Digital contends it received, for comparison to the broader set of individuals who received solicitous text messages so he can determine who was contacted without consent. [DE 17 at 13–14].

Digital, however, objects to these requests as irrelevant and unduly burdensome. [DE 28 at 3]. More specifically, Digital contends that Mr. Fralish's demands seek information "far beyond what is relevant to the already problematic proposed class definition, "and it argues that the burden to comply substantially outweighs whatever benefit Mr. Fralish hopes to acquire. [DE 28 at 3]. The Court addresses the relevance of, and burden of production associated with, the class-related data requests in turn.

### b.      Relevance

When certifying a class, the Court must find numerosity, commonality, typicality, and predominance. Fed. R. Civ. P. 23. Considering Federal Rule 23's threshold requirements, precertification discovery is appropriate to determine whether a class can be properly certified, and discovery should be sufficiently broad to allow a putative class plaintiff, like Mr. Fralish, a chance to meet these requirements. *Deslandes v. McDonald's USA, LLC*, No. 1:17-cv-04857, 2019 224137, at *3 (N.D. Ill. Sept. 5, 2017). Here, while Digital argues that the requests are overbroad and seek information

regarding individuals who do not have a Section 227(c) claim and therefore couldn't be part of the putative class, Digital has not demonstrated that the class related information is irrelevant to Mr. Fralish's claims.

First, the scope of class related information Mr. Fralish seeks in ROGs 7–16 and RFPs 7–14, 17, 19, 34–35 is relevant even though it will likely include information regarding individuals who do not have a Section 227(c) TCPA claim. At their narrowest, Mr. Fralish's requests refer to documents relating to individuals who received text messages similar to those received by Mr. Fralish within a 12-month-period. [*E.g.*, DE 17-2 at 9]. These requests would necessarily encompass information identifying individuals who had given prior consent to receive solicitous text messages from Digital. Such individuals would not have a right of action under Section 227(c) because they would not have received a "telephonic solicitation" under the statute. *See* 47 U.S.C. § 227(a)(4); 47 C.F.R § 64.1200(f)(15)(i).

Nevertheless, courts in class-action TCPA cases have consistently held that information regarding plaintiffs and putative class members who were called by a defendant or by others on a defendant's behalf, such as outbound call lists and the number of calls made to those recipients are relevant to the numerosity and commonality requirements listed in Rule 23. *Gebka v. Allstate Corp.*, No: 19-cv-06662 2021 WL 825612, at *19 (N.D. Ill. Mar. 4 2021); *Thrasher v. CMRE Fin. Servs.*, No. 14-1540, 2015 WL 1138469, at *2 (S.D. Cal. Mar. 13, 2015); *see also, e.g., Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 ( S.D. Cal. May 9, 2017); *Median v. Enhanced Recovery Co., LLC*, No. 15-14342-CIV, 2017 WL 5196093, at *3–4

(S.D. Fla. Nov. 9, 2017); *Gosset v. CMRE Fin. Servs.*, 142 F. Supp. 3d 1083, 1087 (S.D. Cal. 2015). The "pertinent question is . . . whether the documents contain information that 'bears relevant on the issue of class certification.'" *Gebka*, 2021 WL 825612, at *19 (citing *Knutson v. Schwan's Home Serv.*, No. 12cv964-GPC (DHB), 2013 WL 3746118, at *4 (S.D. Cal. July 15, 2013)). Although the requested information here is not precisely a call list, it does seek to quantify the number of calls and is therefore analogous to the outbound call lists that have been found relevant to the numerosity and commonality requirements. Thus, the requested text message-related information is relevant to class certification in a way that is analogous to the relevance of call logs in these other TCPA class actions. Moreover, text messages are analogous to phone calls in other TCPA cases such that the text data requested through ROGs 7–16 and RFPs 7–14, 17, 19, 34–35 is relevant to the Rule 23 numerosity and commonality requirements for class certification applicable in this case. *See, e.g.*, *Thrasher*, 2015 WL 1138469.

### c.     Burden of Production

Although relevance takes on a very broad meaning in the context of discovery, it does not automatically translate into discoverability when addressing motions to compel. *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924–25 (N.D. Ill. 2019). Discovery requests must also be proportional to the needs of the case regardless of relevance. *See* Fed. R. Civ. P. 26(b)(1). Proportionality is determined by considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense

of the proposed discovery outweighs its likely benefit. *See Williams v. Angie's List, Inc.,* No. 1:16-cv-00878-WTL-MJD, 2017 WL 1318419, at *14 (S.D. Ind. Apr. 10, 2017). With the burden to demonstrate why a discovery request is improper, the objecting party must show the point at which the burden of producing the discovery outweighs its benefit. *See Flomo v. Bridgestone Ams. Holding, Inc.,* No. 1:06-cv-00627-DFH-JMA, 2009 WL 1456736, at *8 (S.D. Ind. May 20, 2009). Digital has not met that burden here.

Digital simply presents conclusory assertions that the burden of producing information responsive to ROGs 7–16 and RFPs 7–14, 17, 19, 34–35 would completely outweigh any benefit to Mr. Fralish without any explanation of the nature of the burden of production or any comparison to the benefit of Mr. Fralish. [DE 28 at 3, 5]. The benefit of the production of the information sought through ROGs 8–14 and RFPs 7–10, 14 is demonstrated by the fact that it is relevant to the Rule 23 class action certification requirements as discussed above. *See Gebka,* 2021 WL 825612, at *6–7. Additionally, the production of the discovery sought in ROGs 15–16, RFPs 7, 11–12, 34–35, would be beneficial insofar as it is relevant to Digital's affirmative defense that they had received consent to contact Mr. Fralish and members of the putative class. [DE 6 at 20].  As Digital has not shown the point at which the burden of producing this discovery outweighs its benefits, Digital has not met its burden and its undue burden objections are overruled.

For the foregoing reasons, Mr. Fralish is entitled to the class related data he seeks through Interrogatories 7–16 and RFPs 7–14, 17, 19, 34–35.

### III.   CONCLUSION

For the reasons discussed above, the court **GRANTS IN PART** Mr. Fralish's Motion to Compel as to his Interrogatories and Requests for Production and **DENIES IN PART** the Motion as to Mr. Fralish's Requests for Admission. {DE 17]. Consistent with this Opinion and Order, the parties are **ORDERED** to confer to discuss Digital's specific objections to discovery requests, including any remaining lack of clarity as to RFP 21, to the extent necessary. Digital is also **ORDERED** to produce information responsive to Requests for Production Nos. 5–19, 22–31, 34–35, 37–38 and Interrogatories 2, 4, 7–16, 17–18 *instanter* but no later than **December 17, 2021**. The parties are also **REMINDED** of their ongoing obligation to supplementat all discovery responses every six weeks until trial pursuant to Federal Rule of Civil Procedure 26(e) and this Court's Rule 16(b) Scheduling Order [DE 13 at 2].

**SO ORDERED** this 17th day of November 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge